# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### April 22, 2009 Session

## STATE OF TENNESSEE v. RICKY JOE HEADLEY

**Appeal from the Criminal Court for Williamson County**
**No. II-CR10294 & II-CR023199   Jon Kerry Blackwood, Judge**

-------

**No. M2008-01185-CCA-R3-CD - Filed September 29, 2009**

-------

Appellant, Ricky Joe Headley, was indicted by the Williamson County Grand Jury in October of 2007 for four counts of official misconduct in violation of Tennessee Code Annotated section 39-16-402, as a result of actions taken while serving as the Sheriff of Williamson County. Appellant was also indicted by the Davidson County Grand Jury in October of 2007 in a multi-count indictment for thirty-three drug related charges that arose out of his unlawful acquisition of prescription medication from a pharmacy in Davidson County while he was wearing his Williamson County uniform and driving a Williamson County law enforcement vehicle. The cases were consolidated, and Appellant eventually pled guilty to one count of conspiracy to commit official misconduct and four counts of simple possession, all Class A misdemeanors, in exchange for an effective sentence of four years, eleven months, and twenty-five days. Appellant was ordered to serve the sentence on probation, three years of which was to be supervised. At a sentencing hearing, the trial court denied judicial diversion. Appellant appeals this denial. We determine that the trial court considered the factors required for the grant or denial of judicial diversion and did not abuse its discretion in denying judicial diversion to Appellant. Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

David L. Raybin, Nashville, Tennessee, and Russ Heldman, Franklin, Tennessee, for the appellant, Ricky Joe Headley.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Ron Davis, District Attorney General, and Derek K. Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Appellant was indicted for four counts of official misconduct by the Williamson County Grand Jury. Appellant was also indicted by the Davidson County Grand Jury for seventeen counts of unlawful distribution of a controlled substance, a Class D felony, in violation of Tennessee Code Annotated section 53-11-401, three counts of unlawful distribution of a legend drug,[1] a Class C misdemeanor, in violation of Tennessee Code Annotated section 53-10-104, twelve counts of possession of a controlled substance, a Class A misdemeanor, in violation of Tennessee Code Annotated section 39-17-418, and one count of possession of a legend drug without a prescription, a Class C misdemeanor, in violation of Tennessee Code Annotated section 53-10-105.

Appellant filed a motion to transfer venue of the Davidson County cases to Williamson County and join the indictments for a single trial on the matter. The parties filed an agreed order of transfer in which the trial court found it "proper to transfer the indictment[s] pending in [Davidson County] to the Criminal Court of Williamson County."

On February 13, 2008, Appellant pled guilty in a negotiated plea agreement to conspiracy to commit official misconduct, a Class A misdemeanor, with a recommended sentence of eleven months and twenty-nine days. Appellant also pled guilty to four counts of simple possession, all Class A misdemeanors, with an agreed sentence of eleven months and twenty-nine days for each conviction. The sentences for the four convictions for simple possession were ordered to be served consecutively to the sentence for official misconduct, for a total effective sentence of four years, eleven months, and twenty-five days. If the trial court approved the plea agreement pursuant to Rule 11(c)(1)(C) of the Tennessee Rules of Criminal Procedure, Appellant's sentence was to be suspended, and Appellant was subject to three years of supervised probation followed by unsupervised probation for the balance of the sentence. The plea agreement specified that all other counts of the indictments from both Williamson and Davidson Counties were dismissed with prejudice and that Appellant would: (1) undergo a "Drug and Alcohol Assessment and Treatment Screen;" (2) follow the recommendations made as a result of the screen; (3) resign from his position as Sheriff of Williamson County; and (4) promise to refrain from running for public office or seeking any politically-appointed positions. The plea agreement further specified that "adjudication of the defendant's guilt will be withheld to determine if the defendant shall be sentenced pursuant to Tennessee Code Annotated section 40-35-313, judicial diversion."

The parties entered a "Stipulation of Facts" which stated that had the matter gone to trial, the State's proof would have shown that Appellant was in possession of a prescription from Dr. Winston Griner for #100 Lortab and #100 Soma. The prescription did not provide for refills and was filled by Appellant at Brooks Pharmacy on September 25, 2006. Between October 2, 2006, and November 21, 2006, Appellant obtained nine illegal refills of the prescription from Pharmacist Glenn Cleo Brooks who reprinted labels from the September prescription. Appellant's secretary picked up the

---

[1] A "legend drug" is "any item that federal law prohibits dispensing without a prescription from a licensed doctor, dentist, optometrist or veterinarian." T.C.A. § 53-10-101(a).

-2-

prescription on at least three occasions. Appellant provided Mr. Brooks with a new prescription, again specifying no refills, for #100 Lortab on November 21, 2006. Appellant received this prescription and received an additional #100 Soma on this same date, without presenting a prescription. On November 27, 2006, Appellant attempted to obtain a refill and was refused.

Between November 28 and December 8, 2006, Appellant obtained four illegal prescription refills for #100 Lortab and #100 Soma. On December 14, 2006, Appellant's secretary presented the pharmacy with a new prescription and received a refill at the time that Mr. Brooks printed on the old prescription label. Mr. Brooks also filled the new prescription at that time.

On December 20, 2006, Appellant presented a prescription for Lortab and Robaxin. The prescription specified that it was not to be filled until January of 2007, but Mr. Brooks provided Appellant with #100 Lortab and placed Soma in a bottle labeled Robaxin.

On January 3, 2007, Appellant filled the new prescription but Mr. Brooks printed the label such that it appeared to be on hold in the computer. Appellant obtained an illegal refill of this prescription on January 5, 2007. Appellant repeated these actions on January 9 and 16, 2007, obtaining #100 Lortab and #100 Soma in Robaxin bottles each time.

On January 18, 2007, Appellant presented a new prescription for Lortab and Robaxin. This prescription was filled in the same manner. Appellant received #100 Lortab and #100 Soma in a Robaxin bottle. Mr. Brooks then provided Appellant with #30 Ambien on January 26, 2007, for which he did not have a prescription. Appellant received the non-steroidal anti-inflammatory drug Cataflam without a prescription on January 31, 2007.

When Appellant was present at the pharmacy, he was driving a vehicle registered to the Williamson County Sheriff's Office and dressed in his uniform.

Prior to October of 2006, Appellant was diagnosed with a thyroid condition that was being treated with prescription medication. Appellant had informed the pharmacy staff that the medication was the cause for his "thick tongued" speech.

Appellant appeared at the Sheriff's Office in an impaired condition on more than one occasion. He was seen staggering, unsteady on his feet, and even ran into a wall.

Appellant was arrested and interviewed by agents from the Tennessee Bureau of Investigation. During the interview, Appellant admitted his culpability. Appellant informed agents that he got started on the medication because of "bulging discs" and that it was "really about this thing in my lower back." Appellant explained that he "really" needed the medication and that he "never really considered that [he] was violating the law." Appellant acknowledged that he wanted to "make sure that [he] accept[ed] responsibilities [sic] for [his] own action."

In October of 2006, Appellant ordered a Sheriff's Detective to undertake a special investigation of a worthless check for Mr. Brooks. The detective was under the impression that Mr. Brooks was a Williamson County resident when, in fact, he was a resident of Davidson County. Williamson County funds were used to investigate the check. During the course of the investigation, the detective learned that the Brooks Pharmacy, owned by Mr. Brooks, was under investigation. The detective informed Appellant of the investigation.

After reviewing the stipulated facts and the plea agreement, the trial court accepted the plea and set a sentencing hearing for a later date. At the sentencing hearing, Appellant introduced his wife and sons to the trial court and explained that he had been involved in law enforcement since he was sixteen. Appellant worked for the Williamson County Sheriff's Office from 1988 to 1994. He also worked for the Fairview Police Department where he obtained the rank of captain. Appellant ran for the office of Sheriff in 2002 in order to make a positive impact on the profession. Additionally, Appellant felt that he "had [an] awful lot to offer the position and the community."

Appellant explained that he enjoyed singing and had spent several years putting on concerts to raise money to help disadvantaged people with medical expenses.

Appellant began experiencing lower back pain for several years before deciding to see a doctor in 2003. Appellant was treated with Hydrocodone and received lawful prescriptions from Dr. Winston Griner at the Franklin Medical Clinic. Appellant admitted that he became addicted to Hydrocodone in 2006 and eventually received the medication without a prescription.

When Appellant ran for re-election, he met Mr. Brooks, who offered to help out with Appellant's campaign. Mr. Brooks offered to fill Appellant's prescriptions without a co-pay, something he often did for law enforcement personnel. Appellant started getting his prescriptions filled at Brooks Pharmacy and eventually began taking more medicine than he was prescribed. He continued to go to the pharmacy to get medication from Mr. Brooks.

Appellant acknowledged the stipulated facts that were entered by the parties in conjunction with the plea agreement. Appellant informed the trial court that he attempted to kick the addiction on his own but that he kept going back to the pharmacy to get more pills. Appellant did not go to rehabilitation because he was afraid he would know someone. Appellant also admitted that "pride" was part of the reason he did not seek treatment.

Once Appellant was arrested, he entered an inpatient treatment facility in Warrior, Alabama. Appellant remained an inpatient for twenty-six days and an outpatient for ten weeks, four days a week. Appellant also informed the trial court that he was attending twelve-step meetings at least five times a week during this period of time. Appellant also paid $13,000 in a drug tax that was assessed by the State of Tennessee.

Appellant remained Sheriff of Williamson County until his plea agreement was entered by the trial court, a little over one year after his arrest. Appellant was being paid by the county and did

not want to resign. Appellant acknowledged that the morale of the deputies was affected by his behavior and subsequent arrest and indictment.

Appellant admitted that each time he illegally obtained medication, he violated his oath of office. Appellant testified that he had learned a lot from treatment, that "addiction is a lifelong recovery process . . . that [he] will have to deal with the rest of [his] life. . . ." Appellant expressed his remorse and admitted that "addiction is something that is extremely more powerful than - than the individual and that there's absolutely no way that - that [he] would have jeopardized the situation [he] was in had something not had control of me that I didn't have - that I did not have control over, and I realize now why I did not have control over."

The presentence report that was entered into evidence contained a lengthy statement from Appellant which essentially mirrored his testimony at the sentencing hearing.

On cross-examination, Appellant admitted that he had previously stated to the media that punishment for a law enforcement officer who commits a crime should be three times that of an ordinary citizen. Appellant felt that law enforcement should be treated "more harshly" and that they are held to a higher standard.

The trial court also heard testimony of Captain Roddy Parker of the Williamson County Sheriff's Office. Captain Parker testified that Appellant remained in office while under indictment and this resulted in low morale among road deputies. Captain Parker explained that officers were disappointed by the public ridicule of the situation.

Brent Sanders, a real estate broker and personal friend of Appellant, testified regarding Appellant's commitment to civic work. Mr. Sanders explained that using his musical skills Appellant had helped to raise money for people in need. Bobby Bennett also testified regarding Appellant's willingness to donate his time and talents to people who are "down on their luck." Mr. Bennett and Appellant became "great" friends but Mr. Bennett was unaware of Appellant's drug problem. Appellant also submitted thirteen letters of support from local individuals who supported the grant of judicial diversion.

At the conclusion of the hearing the trial court made extensive findings regarding whether Appellant should be placed on judicial diversion. The court noted the many factors that weighed in favor of the grant of diversion, but in the end concluded that those factors were outweighed by the circumstances of the offense including Appellant's breach of the public trust as a law enforcement officer.

*Analysis*

On appeal, Appellant claims that the standard of review on the denial of his application for judicial diversion should be de novo rather than an abuse of discretion. Specifically, in a well-reasoned and interesting argument, Appellant avers that judicial diversion "is too important" to be

governed by an abuse of discretion standard like pretrial diversion. In the alternative, Appellant argues that the trial court abused its discretion by failing to weigh the relevant factors; improperly assigning controlling weight to the circumstances of the offense, the interests to the public and the ends of justice when all other criteria supported diversion; and by denying judicial diversion after admitting its difficulty in understanding "what meets the ends of justice," a factor considered by the trial court in making its determination. The State responds by arguing that the proper standard of review is an abuse of discretion. Further, the State contends that the trial court properly denied diversion.

Judicial diversion is similar to pretrial diversion. However, judicial diversion follows a determination of guilt, and the decision to grant judicial diversion is initiated by the trial court, not the prosecutor. *State v. Anderson*, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992). Judicial diversion allows a defendant who is judged guilty to, "upon successful completion of a diversion program, receive an expungement from all 'official records' any recordation relating to 'arrest, indictment or information, trial, finding of guilty, and dismissal and discharge' pursuant to the diversion statute." *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999) (quoting T.C.A. § 40-35-313(b)). "The effect of discharge and dismissal under the diversion statute 'is to restore the person . . . to the status the person occupied before such arrest or indictment or information.'" *Id.* (quoting T.C.A. § 40-35-313(b)). A final disposition of the case does not occur until either the defendant successfully completes the diversion program or violates a condition of his release. *State v. Teresa Dockery*, No. E2001-01493-CCA-R3-CD, 2002 WL 1042187, at *2 (Tenn. Crim. App., at Knoxville, May 23, 2002), *perm. app. denied*, (Tenn. Nov. 4, 2002); *State v. Glenna Kidd*, No. 01C01-9808-CR-00344, 1999 WL 298309, at *1 (Tenn. Crim. App., at Nashville, May 13, 1999). Judicial diversion may be ordered only with the consent of a "qualified defendant." T.C.A. § 40-35-313(a)(1)(A).

A qualified defendant is one who:

(a) Is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;

(b) Is not seeking deferral of further proceedings for a sexual offense or a Class A or Class B felony; and

(c) Has not previously been convicted of a felony or a Class A misdemeanor.

T.C.A. § 40-35-313(a)(1)(B)(i)(a), (b), & (c).

We note, as admitted and acknowledged by Appellant, that this Court has previously determined that abuse of discretion is the proper standard upon which to review the denial of an application for judicial diversion. *State v. Paul David Cable*, No. 03C01-9409-CR-00349, 1995 WL 328796, at *2-3 (Tenn. Crim. App., at Knoxville, June 1, 1995). When a defendant contends that the trial court committed error in refusing to grant judicial diversion, we must determine whether the

trial court abused its discretion by denying the defendant's request for judicial diversion. *State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997). In other words, we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision. *Id.*; *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

The criteria that the trial court must consider in determining whether a qualified defendant should be granted judicial diversion are similar to those considered by the prosecutor in determining suitability for pretrial diversion and includes the following: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) the deterrence value to the defendant and others." *Parker*, 932 S.W.2d at 958; *see also Cutshaw*, 967 S.W.2d at 343-44. An additional consideration is whether judicial diversion will serve the ends of justice, i.e., the interests of the public as well as of the defendant. *See Parker*, 932 S.W.2d at 958; *Cutshaw*, 967 S.W.2d at 344; *State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000).

After hearing the evidence, the trial court concluded that the circumstances of the offense weighed heavily against the grant of diversion but noted that Appellant's non-existent criminal history weighed in favor of the grant of diversion. The trial court noted that Appellant's amenability to correction was good, considering Appellant's willingness to attend treatment and acknowledgment of his problem. However, the trial court concluded that the need for deterrence was high and that judicial diversion was not an option, in part, due to the fact that Appellant was a public official who damaged the public perception of law enforcement personnel and violated the public who entrusted him to carry out his official duties as Sheriff. Appellant continued to act as Sheriff after he recognized that he had a drug problem, even asking his secretary to take a county-owned vehicle to pick up his illegal prescriptions.

This Court has previously upheld the denial of judicial diversion where the trial court considered the fact that the offender was a law enforcement personnel and either used their position or abused their position to facilitate their disregard for the law. *See State v. Linda H. Overholt*, No. E2003-01881-CCA-R3-CD, 2005 WL 123483, at *12 (Tenn. Crim. App., at Knoxville, Jan. 21, 2005), *perm. app. denied* (Tenn. May 23, 2005) (upholding denial of judicial diversion for employee of law enforcement agency who sold marijuana where trial court determined that defendant's status as a law enforcement official was of "marginal concern" in the decision); *State v. Lucy Thompson*, No. M2004-00711-CCA-R3-CD, 2004 WL 2439407, at *2-3 (Tenn. Crim. App., at Nashville, Oct. 29, 2004) (upholding denial of judicial diversion where defendant, an employee of a correctional facility, introduced contraband into the penal facility).

Appellant seems to argue that the trial court improperly denied diversion by placing too much weight on some of the factors and by not adequately addressing some of the factors. After reviewing the evidence presented to the trial court at the sentencing hearing, we determine that the trial court considered the necessary factors and that there was "substantial evidence" to support the trial court's denial of judicial diversion. *See Cutshaw*, 967 S.W.2d at 344; *Parker*, 932 S.W.2d at 958. In its

decision, the trial court explained that it placed more weight on some factors than others and found Appellant's position as Sheriff to be influential in that he was less entitled than the ordinary citizen to have his slate wiped clean by judicial diversion. In other words, the egregiousness of the facts led the trial court to weigh the interests of the public more heavily than some of the other factors. This was adequately explained by the trial court in its decision to deny diversion.

Further support for the trial court's denial of diversion can be found in *State v. Woodson*, 608 S.W.2d 591 (Tenn. Crim. App. 1980). In *Woodson*, this Court upheld the denial of probation for a city detective who was convicted of offering to accept a bribe to fix a case that was under investigation by the police department. 608 S.W.2d at 593. We determined that the defendant's position as a public official made the circumstances of the offense "not only wicked and reprehensible." *Id.* at 594. Moreover, this Court commented that "public officials, and especially members of the criminal justice system, are called upon to act in accordance with an even higher standard than that applied to the average citizen" and when they commit a crime they not only violate their oath of office, but breach the "public trust." *Id.* In conclusion, this Court held that a trial court could weigh this factor in the grant or denial of probation. *Id.*

While *Woodson* dealt with the grant of probation, judicial diversion is a more lenient disposition of a criminal case. Moreover, at least one panel of this Court has applied the decision in *Woodson* to the grant or denial of judicial diversion. *In State v. Michael Earl Cameron*, No. E2006-00303-CCA-R3-CD, 2006 WL 2535370, at *4 (Tenn. Crim. App., at Knoxville, Sept. 5, 2006), *perm. app. denied*, (Tenn. Jan. 29, 2007), this Court, citing *Woodson* overturned the grant of judicial diversion to a State Trooper who pled guilty to aggravated assault with a deadly weapon based on the fact that the defendant violated a position of public trust. 2006 WL 2535370, at *4. The same analysis is applicable herein. Appellant was most certainly in a position of public trust as the elected sheriff of Williamson County. While we acknowledge the many factors that favor the grant of judicial diversion, Appellant took an oath of office in which he agreed to uphold the laws of the State of Tennessee. Despite this pledge, Appellant repeatedly broke the law while in uniform and drove, in a county-owned vehicle to illicitly obtain prescription drugs. In conclusion, we determine that the trial court adequately stated sufficient reasons for according more weight to the circumstances of the incident and Appellant's status as a public official. Accordingly, the trial court did not, therefore, abuse its discretion. This issue is without merit.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

-8-